**WORDS & DATA, INC., Plaintiff,**

v.

**GTE COMMUNICATIONS SERVICES, INC. and US Telecom, Inc., as partners of and d/b/a US Sprint Communications Company, Defendants.**

**No. 89–0175–CV–W–9.**

United States District Court,
W.D. Missouri, W.D.

May 23, 1991.

Gerald M. Kraai, Husch & Eppenberger, William A. Rudy, Litman, McMahon & Brown, Kansas City, Mo., for plaintiff.

Lee J. Hollis, U.S. Sprint Communications Co., John M. Collins, Hovey, Williams, Timmons & Collins, P.C., Kansas City, Mo., Mark Regen, Reston, Va., for defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

### I. *Background*

On April 18, 1989, Words & Data, Inc. (Words and Data) filed its amended and substituted Complaint against G.T.E. Communications Services, Inc. and U.S. Telecom, Inc., as partners of and doing business as U.S. Sprint Communications Company (Sprint) alleging copyright infringement pursuant to 17 U.S.C. § 401, *et seq.* and unfair competition under both 15 U.S.C. § 1125(a) and Missouri common law. Words & Data's claims relate to forms used by Sprint in its telemarketing activities.

Words and Data obtained copyrights for the "literary and graphic" work in the telemarketing forms. Amended and Substituted Complaint at ¶¶ 7, 14. Words & Data alleges Sprint infringed its copyrights in the forms in violation of 17 U.S.C. §§ 501(a) and 106(1), (2) and (5) by 1) removing the copyright notices from the forms; 2) preparing derivative works; 3) reproducing the copyrighted and derivative works; 4) displaying plaintiff's copyrighted work publicly; and 5) submitting its infringing copies and forms to prospective vendors with a Request for Proposal. *Id.* at ¶ 11.

In regard to its claim of unfair competition, Words and Data alleges that: "(a) [d]efendant passed or attempted to pass upon [sic] the public the works of plaintiff

as the works of defendant; (b) [d]efendant inequitably pirated plaintiff's work and the fruits of plaintiff's labors." *Id.* at ¶ 18. Words & Data further alleges that "[d]efendant's acts of unfair competition have created a likelihood of, and actual, confusion in the minds of the relevant public as to the authorship, ownership, source, origin, identification, and copyright of plaintiff's works." *Id.* at ¶ 19.

Sprint is an international long distance telecommunications company based in Kansas City, Missouri. Words & Data is a direct mail advertising agency and supplier of computer services to the direct marketing industry. In late 1986 and early 1987, Jim Veilleux (Veilleux), Director of Market Management at Sprint, met in person with Carl Zetmeir (Zetmeir), President of Words & Data. Veilleux was looking for an effective way to gather and track information obtained from sales calls made by account representatives, i.e., the prospect's current carrier (AT & T, MCI, etc.) and usage range (average monthly phone bill).

In 1986, before the meeting between Veilleux and Zetmeir, Words & Data obtained a copyright registration for a form entitled SCRIBE which was an acronym for "Supplemental Capture of Response Information through Barcode Encryption." Defendant's Brief in Support of its Motion for Summary Judgment, Exhibits 2, 4.

The SCRIBE form worked basically as follows: A business mailed a letter requesting the recipient to return a document enclosed with the letter, often a coupon. After bringing the coupon to the store, the salesclerk would scan the barcode on the coupon and then scan the barcodes on the SCRIBE form to input the name of the clerk and other information. After scanning a number of coupons, the clerk would transmit the data scanned to the computer at Words and Data by a modem via telephone line.

Words & Data also sold a scanner, the "sword," a penlike object inserted into a modem, the "stone," when the "sword" was ready to transmit. The process of scanning and transmitting information via the "sword" and the "stone" was called Startrax. *Id.*, Exhibit 3. Zetmeir had obtained a patent on the "Startrax" system.

At the meeting in December 1986, Zetmeir and Veilleux discussed the use of bar coding for tracking information about prospective customers of US Sprint. Following a subsequent meeting in January 1987, and other contacts between Sprint and Words & Data, forms with printed information, barcodes, boxes and blanks were produced for Sprint to use in its telemarketing activities. *Id.*, Exhibit 1. Sprint supplied information to be included on the forms regarding Sprint products and characteristics of the prospective customer such as sales volume, number of employees, current vendor, usage ranges, etc. *Id.*, Exhibit 15, pp. 36–37, 51–52. Each of these forms (SCRIBE I, II and III) were used by Sprint and Zetmeir obtained copyright registrations on each of them. Complaint, Exhibits 3, 11, 13. These three forms will be referred to throughout the remainder of this order as the Fastfix forms.

Each Fastfix form used by Sprint employees had a different prospective customer name. The prospective customer names were sent to Zetmeir who, in turn, printed hundreds of thousands of forms, each with a different prospective customer name. Zetmeir charged Sprint a fee for formatting the forms from the prospective customer database.

Zetmeir also leased and later sold to Sprint a "sword and stone" scanner and modem. With the "sword and stone," Sprint employees scanned the returned forms and sent the information via telephone line modem back to Zetmeir where it was inputed into his computer. Zetmeir then produced periodic data reports for Sprint.

Sprint used Zetmeir to print the Fastfix forms and encode the prospective customer information for several months. Sprint then decided to bid the job competitively. This litigation began after Zetmeir was sent a request for bid quotation.

In its Motion for Summary Judgment and Attorney's Fees and Costs, defendant asserts that plaintiff's copyright infringement claim must fail because defendant is,

at the least, a joint author of the forms and because plaintiff's copyright notice did not satisfy the statutory requirements. Subsequently, plaintiff also moved for summary judgment on the issue of joint authorship. Defendant argues plaintiff's claim of unfair competition "is not cognizable under the Lanham Act because the Fastfix forms have achieved no secondary meaning, there is no likelihood of confusion, and the forms are functional." Defendant also moves for an award of costs and attorney's fees pursuant to 17 U.S.C. § 505.

## II. *Standard for Summary Judgment*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States,* 600 F.2d 725, 727–28 (8th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson v. Liberty Lobby,* 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law. *Id.* at 2512.

### III. *Copyright Infringement Claim (Count I)*

■ Words & Data alleges it obtained copyright registrations "for the literary and graphic work" in the three Fastfix forms. Amended and Substituted Complaint, ¶¶ 7, 14. Therefore, its copyright infringement claim relates solely to alleged infringement of its "literary and graphic" work in the Fastfix forms. Words & Data does not allege infringement of the barcoding process, in general, or that Sprint infringed on Words and Data's computer software or source code. In its Supplemental Response and Motion for Summary Judgment on the Issue of Joint Authorship at p. 16, n. 2, Words & Data states that "[i]t should be noted that the claim for infringement of the SCRIBE source code has not been ruled out by plaintiff." However, plaintiff *does not* bring a claim for source code infringement *in this action.*

■ "Copyright in a work ... vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work." 17 U.S.C. § 201(a). In a joint work, "each contributor automatically acquires an individual ownership in the entire work, including all of the contributions contained therein." 1 M. Nimmer, Nimmer on Copyright, § 6.03 at 6–6 (1990). Therefore, "an action for infringement between joint owners will not lie because an individual cannot infringe his own copyright." *Weissmann v. Freeman,* 868 F.2d 1313, 1318 (2d Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989). *See also Oddo v. Ries,* 743 F.2d 630, 632–33 (9th Cir.1984).

Sprint argues it cannot be liable to Words & Data on its copyright infringement claim because, at the least, Sprint was a joint author of the Fastfix forms and is a joint owner of the copyrights. Words & Data argues that Sprint's defense of joint authorship is inadequate as a matter of law.

### Standard for Joint Authorship

The Copyright Act defines a joint work as one "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101.

In its Supplemental Response at 2, Words & Data argues that as a matter of law, Sprint's claim of joint authorship must fail because:

1. If Sprint was a joint author, then Sprint destroyed the [copyright] when it published large numbers of the final work without *any* copyright notice, placing the work (of which Sprint claims to be joint author) in the public domain;
2. The parties did not intend that Sprint be a joint author; and
3. Sprint's contribution to the final work was *de minimis.*

#### 1. *Did Sprint Destroy the Copyright?*

Whether Sprint destroyed the copyright is irrelevant to the issue of whether Sprint can establish joint authorship. Words & Data states that "[i]f Sprint was a joint author and caused the destruction of the copyright in the final work, then Sprint must account to plaintiff for plaintiff's loss." *Id.* at 3. This assertion has no bearing on the issue of whether Sprint is a joint author and no claim for copyright destruction was made in this case.

#### 2. *Did the Parties Intend That Sprint Be a Joint Author?*

Words & Data argues that it was necessary for Sprint to make an express claim of joint ownership.

First, and foremost, it must be noted that, at the time the work (Fastfix) was made, Sprint never claimed to be a joint author, nor did it ever do anything even suggesting such an intent. On the other hand, plaintiff, via its copyright notice and subsequent letters, made it clear from the start that *it* (Words & Data) was the sole author of the work. Indeed, Sprint didn't claim to be a joint author until almost two and half years later and *after four letters* from plaintiff which asserted plaintiff's sole authorship

rights. Sprint's 'proof' of its intent is *negative.*

*Id.* at 6.

■ The presence or absence of an express conclusory claim of authorship is not determinative of whether one is, in fact, a joint author of a work. In a joint work, "each contributor *automatically* acquires an individual ownership in the entire work...." 1 M. Nimmer, *Nimmer on Copyright,* § 6.03 at 6–6 (1990) (emphasis added). The intent necessary for joint authorship "is the intention, *at the time the writing is done,* that the parts be absorbed or combined into an integrated unit, although the parts themselves may be either 'inseparable' (as in the case of a novel or painting) or 'interdependent' (as in the case of a motion picture, opera, or the words and music of a song)...." H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 120, reprinted in [1976] U.S.Code Cong. & Admin.News 5659, 5736 (emphasis added). "[T]he design of collaboration between joint authors need be preconcerted only in the sense that at the time each author makes his contribution he intends that it shall be an integrated part of a greater work with supplementary contributions to be made by one or more other authors." 1 M. Nimmer, *Nimmer on Copyright,* § 6.03 at 6–8 (1990).

The legislative history of the Copyright Act also states that collaboration is an independent ground for finding the necessary intent for joint authorship.

> Under the definition of section 101, a work is 'joint' if the authors collaborated with each other, *or* if each of the authors prepared his or her contribution with the knowledge and intention that it would be merged with the contributions of other authors as 'inseparable or interdependent parts of a unitary whole.'

H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 120, reprinted in [1976] U.S.Code Cong. & Admin.News 5659, 5736 (emphasis added).

Sprint and Words & Data actively collaborated in developing the Fastfix forms. For example, Zetmeir and Veilleux had two face-to-face meetings, Veilleux showed several sketches to Zetmeir regarding the type of form he wanted and Zetmeir prepared mock-ups for Veilleux. Words & Data and Sprint did not work in isolation and then at a later date merge their contributions into a whole as joint authors sometimes do. For example, in *Edwards B. Marks Music Corp. v. Jerry Vogel Music Co.,* 140 F.2d 266 (2d Cir.1944), the parties separately wrote music and lyrics and later merged their works into a song.

The evidence presented by the parties establishes that at the time Words & Data made its contributions to the Fastfix forms, it did so intending that they would be integrated with the contributions of Sprint. It is undisputed that collaboration took place between Sprint and Words & Data regarding the Fastfix forms. Moreover, even if the parties had worked in isolation, it is difficult to imagine how Words & Data possibly could have intended to author the Fastfix forms without merging its contribution with the contribution of Sprint into a "unitary whole." Words & Data produced the forms for Sprint to use in its telemarketing activities. Without the specific information Sprint provided regarding its products and the data it hoped to obtain regarding prospective customers, the Fastfix forms would have been of no use to Sprint.

### 3. Was Sprint's Contribution to the Final Work De Minimis?

■ The respective contributions of authors to a single work do not need to

> be equal either quantitatively or qualitatively in order to constitute such contributors as joint authors. It would seem, however, that each such contribution must, in any event, be more than *de minimis.* That is, more than a word or a line must be added by one who claims to be a joint author.

1 M. Nimmer, *Nimmer on Copyright,* § 6.07 at 6–18.2 (1990) (citations omitted).

Thus, although Words & Data intended to merge its contribution with that of Sprint, joint authorship will not be found if Sprint's contribution was *de minimis.* Words & Data cites three joint authorship cases involving architects to support its contention that Sprint's contribution to the Fastfix forms was *de minimis.* In *M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903

F.2d 1486, 1492–93 (11th Cir.1990), the court found that a home builder was not a joint author of architectural plans when he prepared a thumbnail sketch of the floor plan he wanted, reviewed drawings in progress, made suggestions and corrections and exercised final approval authority over the work. In *Meltzer v. Zoller,* 520 F.Supp. 847 (D.N.J.1981), the court found a homeowner also was not a joint author of architectural plans. In this case, the client had prepared sketches illustrating features of the house he and his wife wanted, contributed ideas, made certain changes and exercised approval power. *Id.* at 856–57. In *Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co.,* 542 F.Supp. 252, 254 (D.Neb.1982), a contractor "communicated to the plaintiff [architect] through sketches and verbal descriptions its general ideas as to the type of apartment complex it intended to build...." The court found that the contractor's "overall contribution to the plans cannot be said to be more than *de minimis* in nature." *Id.* at 259.

The architectural cases are not dispositive of the issue of joint authorship in this case. In all of the cited cases, the architects transformed their clients' ideas and rough sketches into highly refined architectural plans. In *Empire Construction Company,* 18 sets of blueprints were delivered to the contractor. *Id.* at 254. In the instant case, at least a substantial part of the textual information supplied by Sprint, i.e., headings and subheadings, was never altered or refined in any way by Words & Data. Also, in *Meltzer v. Zoller,* 520 F.Supp. at 856, the court noted that "it is the custom of the architectural profession that architects retain ownership of plans unless an express agreement to the contrary exists...." Words & Data does not assert that it is the beneficiary of any similar custom.

Words & Data also cites two computer software infringement cases to support its assertion that Sprint was not a joint author of the Fastfix forms. In *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.,* 609 F.Supp. 1307, 1318 (E.D.Pa.1985), *aff'd,* 797 F.2d 1222 (3rd Cir.1986), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987), a dental laboratory owner claimed he originated the concept of developing a computer program to accommodate the business needs of a dental laboratory. The owner disclosed in detail the operation and methods of his laboratory to the designer of the computer program, explained the functions to be performed by the computer and designed the language and format of some of the screens. The court held that the contributions of the laboratory owner "were not of sufficient significance to constitute him a co-author of the [computer] system." *Id.* at 1319. In *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1086 (9th Cir.1989), an employee of Payday only "told the programmers what tasks the software was to perform and how it was to sort data. She did none of the coding and does not understand any computer language." The court held that the employee was "not a joint author of the ... [computer] programs." *Id.* at 1087.

The computer software infringement cases are inapplicable to this case because Words & Data does not claim source code infringement, only infringement of the "literary and graphic work" in the Fastfix forms.

Words & Data also argues that Sprint supplied only ideas concerning the "literary and graphic" work in the Fastfix forms and that one must supply more than ideas in order to be a joint author. "To be an author, one must supply more than mere direction or ideas...." *Id.* Words & Data supplemented its briefing on this issue by citing *Ashton–Tate Corp. v. Ross,* 916 F.2d 516 (9th Cir.1990).[1] In this case, two peo-

---

**1.** In *Ashton–Tate Corp. v. Ross,* 916 F.2d at 521, the Ninth Circuit Court of Appeals stated that "[e]ven though this issue is not completely settled in case law, our circuit holds that joint authorship requires each author to make an independently copyrightable contribution."

The Eighth Circuit Court of Appeals has not required this showing for joint authorship. Also, according to Nimmer, the text and legislative history of the Copyright Act support a conclusion that a contribution of ideas can be suffi-

ple worked together on a computer spreadsheet program—person A worked on the computational half of the program and person B worked on the user-interface portion of the program. The court held that A was not a joint author of the user-interface program even though he discussed ideas and concepts for the total program with B and gave B a handwritten list of user commands he thought the interface should contain. Importantly, the court did not hold that A was not a joint author of the total spreadsheet program because such a program was never completed—A combined his computational component with a different user-interface component and B combined his user-interface component with a computational program that was not developed by A. In the instant case, Sprint is claiming a joint authorship interest in the total finalized Fastfix forms, not in an isolated portion of the forms developed by Words & Data.

Moreover, although Sprint does argue that Veilleux had "ideas" to use a bar coded form, to have blanks for certain information and to have a record of the current vendor, defendant's Motion for Summary Judgment at 15, 17, the evidence also establishes that Sprint supplied far more than just ideas to the "literary and graphic" work in the Fastfix forms.

"Literary" is defined as "having the characteristics of literature," and literature, in turn, refers to various kinds of writings or other printed matter. Webster's Third New International Dictionary, Unabridged, 1321 (1981). Therefore, the text or printed information on the forms supplies whatever "literary" work is present in them. With the exception of the

identification number on each Fastfix form, the deposition testimony of Zetmeir establishes that Sprint supplied all of the text on the Fastfix forms.

Q. (By Mr. Hollis) I'm showing you what's been marked as Zetmeir Deposition Exhibit 4. Can you please identify that for me?

A. Yes. This is a rough drawing that Mr. Veilleux provided to me, indicating some of the information that needed to be printed on this report format.

Q. And that information included—go ahead.

A. You're asking the questions.

Q. That information included the lead I.D. number—I've got to read this so you can see while I read—the business name, the territory number, the business phone, the business name, the address one, address two, address three, contact name, contact title, industry description, number of employees, sales volume, single/multilocation business, estimated usage, number of lines (WTNs), number of trunks, equal access availability, other services available, FGA, PGB, WATS, 800, type of lead, division, branch, territory, changes, number, perforation, lead I.D., changes to name/address/phone, changes, to other text information, name and address information in a box. Is that correct?

A. That is correct.

Sprint's Motion for Summary Judgment, Exhibit 15, deposition of Karl Zetmeir at 36–37.

Q. Just so I understand in referring to Deposition Exhibit 8, when you worked with Mr. Veilleux to produce this form,

---

cient to qualify a contributor as a joint author. The

> language [of the Act] contains no requirement that each contribute an independently copyrightable component to the joint work. The legislative history similarly elevates intention as the touchstone, without placing any further parsing as to the copyrightable status of each individual component that the parties intend to contribute to the work as a whole.

1 M. Nimmer, *Nimmer on Copyright*, § 6.07 at 6–18.2, 6–18.3 (1990).

Moreover, if Sprint is not considered a joint author under the Ninth Circuit's standard, it is

likely that Words & Data also would not be considered a joint author and could not bring this action for copyright infringement. Without the textual contribution of Sprint, the Fastfix forms would have been virtually meaningless blank forms. The copyright regulations state that "[b]lank forms, such as time cards, graph paper, account books, diaries, bank checks, scorecards, address books, report forms, order forms and the like, which are designed for recording information and do not in themselves convey information" are examples of work not subject to copyright. 37 C.F.R. § 202.1(c) (July 1, 1990).

you provided the idea of using the perforation (indicating), and Mr. Veilleux contributed the information that was to go onto the form such as, 'Current Vendor, Products Sold, Usage Range,' and so forth?

A. He contributed the headings.

Q. Was there anything else that you contributed besides the idea of using the—

A. I contributed everything—

Q. Wait, wait. Besides the idea of using the perforation?

A. Yes, I contributed everything except the headings.

Q. Well, you've already told us that Mr. Veilleux contributed the Dial 1 WATS, the banded WATS, and that's not a heading, is it?

A. Yes.

Q. Pardon me?

A. Yes.

Q. So you're including, when you say headings—

A. Headings, subheads.

Q. —what you're referring to is the text?

A. That's correct.

Q. So Mr. Veilleux contributed the text and you contributed everything else?

A. That's correct.

*Id.* at 51–52.

Words & Data also argues that Sprint's textual contributions to the Fastfix forms are insufficient to establish joint authorship because they were copied from a pre-Fastfix form used by Sprint which was in the public domain. Sprint disputes that the pre-Fastfix form was in the public domain. Moreover, even if it was in the public domain, the text of the Fastfix forms (defendant's Motion for Summary Judgment, Exhibit 1, Zetmeir deposition Exhibit 8) and the pre-Fastfix form (plaintiff's Statement of Facts in Support of Motion for Summary Judgment and plaintiff's Supplemental Response to Allegations of Fact in Defendant's Reply, Attachment A, Zetmeir deposition Exhibit 1) are considerably different. For example, many of the headings and subheadings on the Fastfix forms were not included on the pre-Fastfix form. The text

of the Fastfix forms was not copied from the pre-Fastfix form.

In his affidavit at 2, Zetmeir states that he "was the author of substantially all of the arrangement, layout and graphic design of the S.C.R.I.B.E. I, II, and III forms (Exhibit 8)." Sprint disputes this assertion by citing Zetmeir's deposition testimony at 36–40 that Veilleux made preliminary sketches in regard to the Fastfix forms. Defendant's Reply Brief at 8. As well as containing substantial information about the text of the forms, Veilleux's preliminary sketches also relate to their graphic design. For example, Veilleux notes where he wants blanks placed and if specific elements should be bar coded. Defendant's Motion for Summary Judgment, Exhibits 5–8. Zetmeir also testified that Veilleux "rearranged" material on a mock-up he submitted to him.

Q. And after you gave the mock-up to Mr. Veilleux, what did he say?

A. He thought that was fine, except he wanted to rearrange headings and information.

Q. And what did he rearrange, as far as you can remember?

A. Oh, he wanted to add boxes under, 'usage ranges.' He wanted to, you know, add more ranges. He might have wanted to add something under, 'Current Vendor,' add another box in here (indicating) or another heading information. He was concerned about the heading, 'Delete lead,' afraid that telemarketers would, if they didn't want to make the phone call, that they would just mark that box as an easy way out, so he wanted to change the semantics.

*Id.*, Exhibit 15 at 44–45.

The undisputed facts show that Veilleux made some contribution to the "arrangement, layout and graphic design" of the Fastfix forms. Moreover, even if Zetmeir contributed substantially all of the "arrangement, layout and graphic design" of the forms, Sprint has established that it supplied substantially all of the text. Sprint's total contribution to the Fastfix forms cannot be regarded as *de minimis*.

■ Words & Data argues further that Sprint should not be considered a joint author because Sprint did not claim to be a joint author after Words & Data's copyright notice appeared on the Fastfix forms. Words & Data cites Nimmer for the proposition that if a work "is exploited for a considerable period of time prior to a claim of joint authorship, this will be a persuasive circumstance indicating that the person making such claim is not in fact a joint author." 1 M. Nimmer, Nimmer on Copyright, § 6.07 at 6–19 (1990). However, in the case Nimmer cites to support this statement, *Jerry Vogel Music Co. v. Forster Music Publisher, Inc.*, 147 F.2d 614, 616 (2d Cir.), *cert. denied*, 325 U.S. 880, 65 S.Ct. 1573, 89 L.Ed. 1996 (1945), the party trying to establish joint authorship of a copyrighted song had made no claim to the copyright for almost *28* years. The length of time Words & Data displayed its copyright is significantly shorter and the absence of an express copyright claim by Sprint does not mandate a finding of sole authorship by Words & Data.

Viewed in the light most favorable to Words & Data, the undisputed facts of this case show that Sprint is a co-author of the "literary and graphic work" in the Fastfix forms. As a matter of law, Sprint cannot infringe Words & Data's copyrights in these forms.

Because Words & Data's copyright infringement claim fails due to Sprint's joint authorship of the forms, I will not consider Sprint's assertion that the copyright notice of Words & Data failed to satisfy the statutory prerequisites.

## IV. *Unfair Competition Claim (Count II)*

■ Plaintiff's claim of unfair competition is brought pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and Missouri common law. Missouri common law regarding unfair competition is coextensive with federal law, *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1331, n. 6 (8th Cir.1984).

"The protection accorded by the law of trademark and unfair competition is greater than that accorded by the law of patents because each is directed at a different purpose. The latter protects inventive activity.... The former protects commercial activity...." *Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1215 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976).

Section 43(a) of the Lanham Act provides:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a).

Section 43(a) is used to protect a product's trade dress from "confusingly similar imitations." *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 132 (8th Cir.1986) (citations omitted). The trade dress of a product "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Id.* (citation omitted).

■ A manufacturer can obtain protection under the Lanham Act if 1) the trade dress of its product is nonfunctional, 2) the trade dress has acquired a secondary meaning and 3) a competitor's imitation of the trade dress creates a likelihood of confusion in consumers' minds as to the origin of the product. *Id.* (citations omitted). As an example, in *Truck Equipment Service*

*Company v. Fruehauf Corporation*, 536 F.2d 1210, a manufacturer copied plaintiff's unique design of a twin hopper bottomed grain semitrailer. Plaintiff was given protection under § 43(a) because portions of the truck's design were nonfunctional and had acquired a secondary meaning in the public mind and its imitation caused a likelihood of confusion in the marketplace.

### Nonfunctional Trade Dress

The Eighth Circuit Court of Appeals follows this standard regarding functionality:

Imitation of the physical details and design of a competitor's product may be actionable, if the particular features imitated are 'non-functional' and have acquired a secondary meaning. * * * But, where the features are 'functional' there is normally no right to relief. 'Functional' in this sense might be said to connote other than a trade-mark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interests in free competition permits its limitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection.

*Id.* at 1217–18, *citing Bliss v. Gotham Industries, Inc.*, 316 F.2d 848, 855 (9th Cir. 1963) (other citations omitted).

Words & Data argues that the "look, layout and style [of the Fastfix forms] is not totally utilitarian." Plaintiff's Brief in Opposition to Motion for Summary Judgment at 22. However, the "look, layout and style" of the forms certainly are related to basic consumer demands in the product. As Sprint argues in relation to the Fastfix forms, "it defies logic to assume that Sprint, or for that matter any party,

would undertake to provide arbitrary, nonfunctional features in such an internal form." Defendant's Brief in Support of Motion for Summary Judgment at 26.

Words & Data also notes that "Sprint placed its logo on the form and named it 'Fastfix.' The functionality of these features is minimal." Plaintiff's Brief in Opposition at 22. The functionality of these features also is irrelevant because Sprint did not copy them from Words & Data. Sprint's removal of Words & Data's copyright notice (a nonfunctional feature) likewise is irrelevant because Sprint did not copy the copyright notice.

Words & Data has not come forward with facts outside the pleadings to show that there is a genuine issue for trial regarding whether the design of the Fastfix forms primarily is nonfunctional.

### Secondary Meaning of Fastfix Forms

The Eighth Circuit Court of appeals states that the following elements are necessary to establish secondary meaning:

[A] name, mark, or symbol by long and exclusive use and advertising by one person in the sale of his goods * * * may become so associated in the public mind with such goods * * * that it serves to identify them and distinguish them from the goods * * * of others. When such an association exists, the name, make, or symbol is said to have acquired a 'secondary meaning' in which the original user has a property right which equity will protect against unfair appropriation by a competitor.

*Truck Equipment Service Co. v. Fruehauf Corp.* at 1219 (quoting *Shoppers Fair of Arkansas, Inc. v. Sanders Co.*, 328 F.2d 496, 499 (8th Cir.1964)) (other citations omitted).

Sprint argues there can be no secondary meaning in the public mind about the Fastfix forms because Sprint is the only purchaser of the forms that have been in existence a comparatively brief period of time. Brief in Support of Motion for Summary Judgment at 24. Words & Data asserts and supports with material outside the pleadings that Innovative Software, another Words & Data client, has used the Fast-

fix forms. Plaintiff's Statement of Facts, Zetmeir deposition II at 79. However, Words & Data sets forth no facts outside the pleadings to show that the "look, layout and style" of the forms have acquired a secondary meaning.

Likelihood of Confusion As to the Source of the Origin of the Fastfix Forms

"The key to finding a violation under section 43(a) is a determination that the materials used by the defendant created a likelihood of confusion, deception or mistake on the part of the *consuming public.*" *Metric & Multistandard Components Corp. v. Metric's, Inc.,* 635 F.2d 710, 714 (8th Cir.1980) (citations omitted) (emphasis added). Sprint argues the consuming public cannot be confused because it is the only consumer.

Words & Data asserts that:

Sprint, by removing the copyright notice and distributing the Fastfix to other vendors (plaintiff's competitors) and to Sprint's own employees around the country, effectively made plaintiff's work the work of Sprint. Clearly, these acts created a likelihood of confusion in the minds of the relevant public—i.e., plaintiff's competitors, plaintiff's competitors' employees, and Sprint's employees.

Plaintiff's Brief in Opposition at 22–23.

Words & Data's argument misses the mark. The vendors to whom Sprint sent the forms are not part of the "consuming public" because Sprint sent the forms to them to obtain bids on their production. Sprint employees are not part of the "consuming public" because they were not actual or potential purchasers of the Fastfix forms. Defendant's Brief in Support, Exhibit 13, affidavit of Daniel McCormick at ¶ 3.

Moreover, Words & Data has come forward with no evidence outside the pleadings to show that there is any likelihood of confusion on anyone's part, including its other client who used the Fastfix forms, Innovative Software.

To withstand a Motion for Summary Judgment, the non-moving party must go beyond the pleadings and show there is a genuine issue for trial. *Celotex v. Catrett,*

106 S.Ct. 2548, 2553. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby,* 106 S.Ct. 2505, 2511. Words & Data has come forward with virtually no evidence to support its unfair competition claim. Summary judgment will be granted on Count II.

### V. *Attorney's Fees*

██ Defendant requests that attorney's fees be awarded pursuant to 17 U.S.C. § 505 which provides in part that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. Sprint does not request an award of attorney's fees pursuant to the Lanham Act.

Defendant argues that:

Plaintiff's complaint, which makes allegations of copyright infringement against a joint author not amendable [sic] to suit and by making a claim of unfair competition where plaintiff does not satisfy even one element of the cause of action, justifies an award of attorney's fees and costs in defendant's favor. Plaintiff's attorneys were obligated to investigate the factual background of the complaint. Had they done so, they should have recognized the joint authorship of the form and the clear lack of standing to bring an unfair competition claim.

Defendant's Brief in Support at 28.

An award of attorney's fees under the Copyright Act "is committed to the discretion of the district court." *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 122 (8th Cir.1987). A district court's factual findings regarding attorney's fees are binding on a reviewing court unless they clearly are erroneous; review of legal determinations is plenary. *Id.* (citation omitted).

The appellate courts have taken different approaches to the award of attorney's fees under § 505.

The Eleventh Circuit requires only that the litigant seeking fees is the prevailing party and that the fee is reasonable. *Original Appalachian Artworks, Inc. v. McCall Pattern Co.*, 825 F.2d 355, 356 (11th Cir.1987); *Donald Frederick Evans & Assoc., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 916–17 (11th Cir.1986). An award of fees is not automatic, however. Although an award is not preconditioned on a showing of bad faith or frivolity, a losing plaintiff's good faith in bringing a colorable claim will justify a district court's denial of fees. *Original Appalachian Artworks, Inc.*, 825 F.2d at 356; *Donald Frederick Evans & Assoc., Inc.*, 785 F.2d at 916–17. Other courts impose a heavier burden on defendants than on plaintiffs on the theory plaintiffs must not be deterred from bringing infringement suits. In these courts fees are generally awarded to a prevailing plaintiff. *Roth v. Pritikin*, 787 F.2d 54, 57 (2d Cir.1986). On the other hand, these courts require the 'award of attorney's fees to a defendant under section 505 [to] be predicated on a finding of bad faith or frivolity' by the plaintiff. *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 322 (9th Cir.1987).... Expressing the belief that a prevailing party should not be awarded attorney fees as a matter of course, the Third Circuit leaves the matter to the discretion of the district court, taking into account factors such as 'frivolousness, motivation, objective unreasonableness, * * * and the need in particular circumstances to advance considerations of compensation and deterrence.' *Lieb v. Top Stone Industries, Inc.*, 788 F.2d 151, 156 (3rd Cir.1986).

*Hartman*, 833 F.2d at 122–23.

In *Hartman*, the Eighth Circuit Court of Appeals reviewed a district court's refusal to award attorney's fees to a defendant who had been granted summary judgment on plaintiff's copyright infringement claim. The court stated:

Admittedly, the district court's order denying fees is unclear on the precise legal standard it applied in denying Hallmark's fee request. Even so, we are not re-quired in the circumstances of this case to select a definitive standard for awarding attorney fees in copyright cases. Unquestionably, the district court expressed doubt about the quality of Hartman's case. The court found, however, Hartman had not acted in bad faith and that her complaint was colorable and not baseless. Under any of the standards that have been applied to the section 505 fee determination, the finding that Hartman's claim was not baseless supports the district court's determination not to award fees.

*Id.* at 123 (citation omitted).

In *United Telephone Co. of Missouri v. Johnson Publishing Co., Inc.*, 855 F.2d 604, 612 (8th Cir.1988), the court held the trial court did not abuse its discretion in denying attorney's fees to a plaintiff that had been granted summary judgment on its copyright infringement claim. In *RCA/Ariola International, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 787 (8th Cir.1988), the court upheld an award of attorney's fees to a plaintiff that had been granted summary judgment on its copyright infringement claim and stated that "[i]t appears that bad faith has not been considered a prerequisite for awarding attorney's fees in this circuit." In *Applied Innovations, Inc. v. Regents of the University of Minnesota*, 876 F.2d 626, 638 (8th Cir.1989), the court upheld a denial of attorney's fees to a copyright infringement plaintiff that had prevailed in a bench trial in an action that involved "numerous complex or novel questions which defendant had litigated vigorously and in good faith." In relation to a standard for awarding attorney's fees under § 505, the court stated: "We are reluctant to adopt a particular standard. For purposes of this appeal, it is sufficient to decide that attorney's fees should not be awarded to a prevailing plaintiff as a matter of course." *Id.* (citation omitted).

Under the law of the Eighth Circuit, Sprint is not entitled to an award of attorney's fees as a matter of course. Under *Hartman*, an award of attorney's fees to Sprint apparently would be appropriate if

Words & Data's copyright infringement claim was baseless. The facts of this case do not support a finding that Words & Data's claim was baseless and an award of attorney's fees to Sprint is not warranted. Because Sprint did not request attorney's fees pursuant to the Lanham Act, I will not consider awarding attorney's fees based on plaintiff's assertion of the unfair competition claim.

### VI. *Conclusion*

Accordingly, it is hereby ORDERED that:

1) defendant's Motion for Summary Judgment on Count I is granted;

2) defendant's Motion for Summary Judgment on Count II is granted;

3) plaintiff's Motion for Summary Judgment on the issue of joint authorship is denied; and

4) defendant's request for an award of costs and attorney's fees pursuant to 17 U.S.C. § 505 is denied.