**N.A.D.A. SERVICES
CORPORATION, Plaintiff,**

v.

**BUSINESS DATA OF VIRGINIA, INC.,
et al., Defendants.**

**Civ. A. No. 85–0929–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

July 8, 1986.

James S. Crockett, Jr., Edward H. Starr, Jr., Mays, Valentine, Davenport & Moore, Richmond, Va., Keith Wilhelm, Jeffrey S. Ward, Leydig, Voit & Mayer, Ltd., Chicago, Ill., for plaintiff.

Alan E. Branigan, H. Warren Burnam, Jr., Arlington, Va., for Business Data of Virginia, and Lawson K. Headley.

## MEMORANDUM

MERHIGE, District Judge.

The plaintiff in this matter, N.A.D.A. Services Corporation ("NADA"), has filed suit for infringement of copyright[1] against Business Data of Virginia, Inc. ("BDV"), a

---

1. Plaintiff had also initially filed a claim for unfair competition; this claim, however, was subsequently withdrawn.

corporation incorporated, and with its principal place of business, in Virginia, and Lawson K. Headley, BDV's president.[2] The matter has been fully tried and is therefore ripe for disposition.

### Background

NADA produces a publication entitled the *NADA Official Used Car Guide* (*"NADA Guide"*). NADA has been publishing the *NADA Guide* every year since 1933. Beginning in 1969, NADA has issued the *NADA Guide* in nine regional, monthly editions. One of these regional editions is entitled the Eastern Edition. Neither the editions for the years 1979 through 1982 nor the nine regional editions for January 1983 contained a statutory copyright notice. A copyright notice was placed on the January 1984, 1985 and 1986 editions of the *NADA Guide* and copyright registrations were obtained for those editions.

The *NADA Guide* is divided into three sections: an American Car Section, an Imported Car Section and a Truck Section. The vehicles in each section are organized alphabetically by manufacturer. The manufacturer groups are subdivided into series groups, which contain various models categorized according to the equipment included on them. These series groups are further divided into subseries groups. Each subseries group is identified by the common elements of the vehicle identification number for each vehicle within the subseries. The models are identified by the popular name for their body style and by the manufacturer's body style number.

The *NADA Guide* contains the following information for the vehicles listed: average retail value, insurance information, popular name for body style, manufacturer's body style number, manufacturer's suggested retail price, weight, average loan value and average wholesale value.

In addition to publishing the *NADA Guide,* NADA also produced, from 1975 until 1983, magnetic computer tapes ("NADA Tapes") which contained much of the information included in the *NADA Guide.* None of these tapes bore a statutory copyright notice. NADA ceased production and distribution of the NADA Tapes on or about August 1983. At that same time, however, NADA commenced offering licenses in the *NADA Valu Guide.* The *Valu Guide* consists of a data base computer tape, an access routine computer tape, and various operating and instruction manuals. The various editions of the *Valu Guide* correspond essentially to editions of the *NADA Guide.* The *Valu Guide* is operated by the licensee and is designed to generate NADA values for vehicles which are identified by their vehicle identification numbers (VIN) and/or make, code and model year.

Defendant, Business Data of Virginia, Inc., is incorporated in Virginia. Since 1979, BDV has provided an annual service of preparing computer-generated documents for various governmental jurisdictions in Virginia. The governmental units use these documents to assess, for personal tax return purposes, the value of the vehicles located within their jurisdictions.

BDV prepares its computer-generated documents in the following manner: First, BDV obtains, either from the jurisdiction itself or from Virginia's Department of Motor Vehicles, a Vehicle Population ("VP") tape. The VP tape contains a list of all of the vehicles located in the particular jurisdiction. Second, the jurisdiction provides BDV with a Vehicle Assessment System ("VAS") form which states (a) the NADA value (either average trade-in, average loan or average retail) to be used for assessing those vehicles for which NADA values were available, (b) the percent of the specified NADA value which was to constitute the vehicle's assessed value, (c) the statutory assessment values which the governmental jurisdiction wished to use for certain vehicles and (d) the assessment values which the governmental jurisdiction wished

---

**2.** NADA had also named "Business Data of Richmond" as a defendant in its complaint. NADA later dismissed its claims against this defendant, as it appears that no such entity exists.

to use for all vehicles of certain older model years. Third, BDV produces a Vehicle Data File ("VDF") tape for the year in question. This tape contains a comprehensive list of model identification information and the various average values associated with these vehicles. BDV would use the above three sources to produce a list of the assessed values for all the vehicles located in the jurisdiction in question.

From 1979 until 1983, BDV purchased the NADA tapes from NADA and used the information contained therein to produce the VDF tapes. As stated, NADA stopped selling the NADA tapes in 1983. BDV thereafter produced its VDF tapes for the years 1984, 1985 and 1986 by copying the model identification information and associated data contained in the January issues of the 1984, 1985 and 1986 Eastern editions of the NADA Guide and using this information to update its 1983 VDF tape.

On May 21, 1985, this Court entered an order granting plaintiff's motion for summary judgment on the issue of the validity of plaintiff's copyright in the January 1984, 1985 and 1986 editions of the *NADA Guides*. The issues that remain to be decided are therefore as follows: (1) whether BDV's use of the information contained in the *NADA Guides* constituted an infringement of NADA's copyright in such *Guides*, (2) whether BDV's use of the *NADA Guides* is non-infringing by virtue of the fair use doctrine, (3) whether NADA is estopped from enforcing its copyrights in the *NADA Guides* against BDV and (4) whether BDV had an implied license to use the information contained in the *NADA Guides*. The Court will address each of these issues in turn.

### Merits

■ *1. Infringement* —The Court finds as an initial matter that BDV's use of the *NADA Guide* did not constitute an infringing use. BDV did copy a significant portion of the factual information contained in the January issues of the 1984, 1985 and 1986 Eastern editions of the *NADA Guide* when it produced its VDF

tapes for those years. BDV's VDF tapes were essentially computerized versions of the factual information contained in the *NADA Guides* for the corresponding years.

BDV did not, however, sell its VDF tapes to its customers; rather BDV used the VDF tapes to provide a service of assessing the values of vehicles located in its customers' jurisdictions. BDV therefore simply used its copies of the *NADA Guides* for the purpose for which they were intended, namely, to assess the values of various vehicles. Although BDV's sale of its VDF tapes would most likely have constituted an infringement of NADA's copyright in the *NADA Guide*, BDV's use of the VDF tapes to provide a service of assessing vehicles did not constitute such an infringement.

■ *2. Fair Use* —The Court also finds that, even if BDV's use of the information contained in the *NADA Guides* would otherwise be considered infringing, such use is permissible under the fair use doctrine. A use which would otherwise be considered infringing may still be protected if found to be a "fair use." Section 107 of Title 17 of the United States Code provides that, in determining whether the use made of a work is a fair use, the factors to be considered shall include:

(a) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes;

(b) the nature of the copyrighted work;

(c) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(d) the effect of the use upon the potential market for or value of the copyrighted work.

The Court will therefore apply each of the above factors to the instant case.

(a) *Purpose and Character of Use*—The Supreme Court has stated that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of a copyright." *Sony Corporation*

*v. Universal City Studios, Inc.*, 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984). BDV's use of the information contained in the *NADA Guides* is clearly a commercial use, for BDV receives monetary compensation for the provision of its service of assessing vehicle values for governmental jurisdictions. Accordingly, it would appear that BDV's use of such information must be considered presumptively unfair.

■ (b) *Nature of Copyrighted Work*—BDV notes that the *NADA Guides* are essentially compilations of facts, and that facts are traditionally accorded less protection under the copyright laws than are more creative works. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563, 105 S.Ct. 2218, 2232, 85 L.Ed.2d 588, 609 (1985). BDV cannot receive much aid from this doctrine, however, for BDV uses the information contained in the *NADA Guides* to produce its own factual compilations. BDV's factual compilation is therefore worthy of no greater protection than NADA's original compilation. *See Financial Information, Inc. v. Moody's Investors Service, Inc.*, 751 F.2d 501, 509 (2d Cir.1984).

(c) *Amount and Substantiality of Portion Used*—It is clear that BDV copies a substantial amount of the information contained in the *NADA Guides*. BDV copies all of the average financial values included in the *NADA Guides* and approximately fourteen percent of the models listed in each annual edition.

■ (d) *Effect on the Market*—This factor is the single most important element in determining whether there is fair use. *See Harper & Row, Publishers, Inc. v. Nation Enterprises, supra*, 471 U.S. at 566–567, 105 S.Ct. at 2234, 85 L.Ed.2d at 611. A use which does not materially impair the marketability of the copyrighted work will be deemed fair. *See id.* This criteria will be satisfied, not only if the copyright holder establishes that the particular use has already impaired the market for the work, but also if the owner shows that such use, if it were to become widespread, would adversely affect the potential market for the work. *Sony Corporation v. Universal City Studios, Inc., supra*, 464 U.S. at 451, 104 S.Ct. at 793.

The Court finds that defendants successfully established that BDV's use of the information contained in the *NADA Guides* has not, and will not, impair the market for such *Guides*. The Commissioners of the Revenue for three local governmental jurisdictions in Virginia which are currently customers of BDV testified unequivocally that, even if BDV were to cease offering its services of providing assessed values, they would not purchase any more copies of the *NADA Guide* than they currently do. Representations were made by counsel that four other Commissioners of the Revenue, all of whom were present and willing to testify at trial, would similarly state that they would not purchase any more copies of the *NADA Guide* if BDV were forced to discontinue its services. It therefore seems clear that BDV's use of the information contained in the *NADA Guides* does not presently and will not in the future, impair the market for the *NADA Guides*.[3]

■ *3. Estoppel*—Although the Court's finding that BDV's use of the information contained in the *NADA Guides* is non-infringing makes it unnecessary to address defendants' defenses of estoppel and implied license, the Court finds that it would nevertheless be prudent to discuss these issues.

---

3. NADA notes that, in assessing the effect of the use in question on the market, the Court must also consider the effect on the market for works which are derivative of the original copyrighted works. It would therefore appear that the Court should consider the effect of BDV's use of the *NADA Guides* on the market for the *NADA Valu Guides*. NADA has not, however, requested that the Court consider the impact of BDV's use on the *NADA Valu Guides*. Moreover, NADA has not introduced *any* evidence that BDV's use either has impaired or will impair the market for the *Valu Guide*. The Court therefore concludes that a finding of copyright infringement cannot be based on the *NADA Valu Guides*.

BDV's contention that NADA should be estopped from enforcing its copyright in the *NADA Guides* against BDV is based on NADA's sales to BDV between 1979 and 1983 of copies of the NADA Tapes. BDV asserts that, since NADA sold BDV copies of the NADA Tapes, knowing that BDV was using the Tapes to provide a service of assessing vehicle values for governmental jurisdictions, NADA should not be allowed to prevent BDV from copying the information contained in the *NADA Guides* now that NADA has stopped producing the *NADA Tapes.*

The parties agree that, in order to prevail on its defense of estoppel, BDV must establish four elements: (1) plaintiff knew the facts of defendant's infringing conduct, (2) plaintiff intended that its conduct be acted on or so acted that defendant had a right to believe it was so intended, (3) defendant was ignorant of the true facts and (4) defendant was injured by its reliance on plaintiff's conduct. *See Hampton v. Paramount Pictures Corporation,* 279 F.2d 100 (9th Cir.1960); 3 M. Nimmer, *Nimmer on Copyright,* § 13.07. If BDV is unable to establish any one of these elements, its defense of estoppel must fail.

The Court finds that BDV has failed to establish the first element of its estoppel defense, namely, that NADA knew the facts of BDV's conduct. NADA has admitted that it sold a copy of the NADA Tape to BDV in every year from 1978 until 1983. NADA has also admitted that it believed BDV was using the NADA Tapes to assess vehicle values for Loudon County, a local governmental jurisdiction located in Virginia. NADA has asserted, however, that it did not know that BDV was providing its services to any governmental jurisdictions other than Loudon County. BDV has not introduced any evidence to contradict this assertion. NADA has stated that, if it had known that BDV was using its copy of the NADA Tape to process multiple jurisdictions, it would have stopped selling its Tapes to BDV. This assertion seems reasonable, for BDV's use of a single copy of the NADA Tape to assess vehicles in one governmental jurisdiction would not affect the number of sales of the NADA Tape; in contrast, however, BDV's use of a single copy of the NADA Tape to assess vehicle values for multiple jurisdictions would most likely adversely affect sales of the NADA Tape. Accordingly, the Court finds that, since NADA did not know that BDV was using its copy of the NADA Tape to assess vehicle values for multiple governmental jurisdictions, NADA is not estopped from attempting to enforce its copyright in the *NADA Guides* against BDV in the instant case.

 *4. Implied License*—The creation of an implied license, as in the creation of any implied contract, requires a meeting of the minds. It is clear there was no meeting of minds in the instant case. In December of 1983, BDV's president, Lawson K. Headley, met with various NADA officials, including NADA's Executive Director, Norman L. Raymond. Headley was unequivocally informed at this meeting that NADA had begun to copyright the *NADA Guides.* Accordingly, there was no meeting of the minds between BDV and NADA allowing BDV to copy the *NADA Guides.*

### Conclusion

It is clear that what NADA is trying to protect in the instant case is BDV's use of the factual information contained in the *NADA Guides.* Facts are not in and of themselves copyrightable. BDV does not sell copies of the *NADA Guides;* rather, BDV only uses the information contained in such *Guides* for the purpose for which the *Guides* are sold, namely, to assess the values of various motor vehicles. Accordingly, NADA's claim for infringement of copyright must fail.

An appropriate order shall issue.

### JUDGMENT ORDER

For the reasons stated in the accompanying memorandum entered this day, and deeming it proper so to do, it is ADJUDGED and ORDERED that plaintiff's claim for infringement of copyright be and

the same is hereby DENIED and the defendants stand dismissed with their taxable costs. Defendants' counterclaims stand dismissed.

Let the Clerk send a copy of this order and the accompanying memorandum to all counsel of record.