**Dr. Alfred BALKIN, Plaintiff and Counter-defendant,**

v.

**Dr. Paul WILSON, Defendant and Counter-plaintiff.**

No. 4:94:CV:35.

United States District Court,
W.D. Michigan.

Sept. 20, 1994.

Edward J. Annen, Jr., Kalamazoo, MI, for Dr. Alfred Balkin.

Mary E. Delehanty, Gemrich, Moser, Bowser, Fette & Lohrmann, Kalamazoo, MI, for Dr. Paul Wilson.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment. Plaintiff contends that defendant has infringed on plaintiff's exclusive copyrights by selling tapes of songs written by plaintiff, in violation of 17 U.S.C. § 501. Plaintiff requests that defendant turn over all tapes in his possession containing the copyrighted songs and that defendant render an accounting to plaintiff of tapes sold and the funds derived from the sales. Plaintiff seeks a hearing on damages following the rendering of an accounting and also for the assessment of costs and attorney fees to be paid to plaintiff. Finally, plaintiff seeks to enjoin defendant from any further infringement on the copyrights.

Defendant has filed a counterclaim against plaintiff, seeking his share of revenues made by plaintiff from the sale of the tapes or from any other uses of the project. Obviously, if plaintiff prevails on his claim that defendant is not a co-author of the songs, then plaintiff will prevail as to the counterclaim as well.

## FACTS

For the most part, the facts in this case appear to be undisputed. Defendant suggests there is a dispute regarding whether there was the requisite "intent." However, no other facts that are arguably material appear to be in dispute.

Beginning in the spring of 1990, defendant and plaintiff began to collaborate on a project to develop a program called "Literacy Now: Breaking the Language Barrier Through Song." The program was intended to be developed for use by teachers in improving the literacy of their students. At the time of commencing this project, plaintiff and defendant were both professors for Western Michigan University (WMU) in the Department of Education and Professional Development.

In 1990, the parties began developing the program, including making presentations to various foundations in order to secure funding for the project. In 1993, the parties signed an agreement with WMU, apparently in connection with seeking funding from the Kalamazoo Foundation.

Defendant's responsibilities with respect to the project were to conceptualize the project in terms of children's developmental needs for learning about literacy and to write the teacher's manuals that would accompany the songs. Also, according to defendant, his duties included providing plaintiff with ideas for songs that would facilitate growth in reading. Defendant states that he often sat with plaintiff at the piano "while [plaintiff] turned my ideas into songs." For some of the songs, defendant asserts that he provided plaintiff with precise technical specifications for how songs, such as The New Alphabet Song, were to be written.

Defendant claims that for 70% of the songs they would discuss the "content" that was needed in a song and then plaintiff would compose the songs. Afterwards, they would discuss how they liked the songs. According to defendant, plaintiff was quoted in a newspaper article as saying that plaintiff does "the music and lyrics with [defendant] giving a stamp of approval on the songs and suggesting ideas. [Defendant is] like the architect and I am the mechanic."

Defendant does not claim that he wrote a single note of the music or a single word of the lyrics. He does not claim that he made modifications to the songs written by plaintiff.

In the summer of 1993, the grant proposal efforts ended, and the project did not obtain the required funding. In the fall of 1993, plaintiff wrote defendant and terminated his involvement and connection to the proposal.

The project or program referred to "Literacy Now: Breaking the Language Barrier Through Song," which plaintiff acknowledges was a "joint work," was never completed and was never copyrighted. The project was

never the subject of any partnership or corporation.

The songs that were written to be included within the project were all copyrighted by plaintiff, exclusively in his name, because he had written the music and the lyrics. Also, 45 or 46 songs were collected into a work entitled "Literacy Now Through Song (Phase I)" which itself was also copyrighted solely in plaintiff's name. This collection did not include any of the manuals or other prose that defendant was responsible for writing with respect to the never-completed joint project.

Finally, it is clear that defendant was on notice that the songs were copyrighted solely in plaintiff's name. The contract with WMU clearly stated that the songs were copyrighted by plaintiff and that he retained exclusive rights over the songs. Also, the transparencies used by defendant in making presentations of the project included the copyright symbol and stated that the songs were copyrighted in plaintiff's name.

Shortly before plaintiff terminated his involvement in the project, he had provided tapes of the copyrighted songs which were contained in the work "Literacy Now Through Song (Phase 1)" to defendant for the purpose of selling them to defendant's students within the format of a tutorial project. The tapes are labeled: "Literacy Now Through Song," followed by "Dr. Al Balkin and Dr. Paul Wilson," followed by "performed by the composer, Al Balkin." The label also indicates "Now View Music" as the apparent publisher of the tapes. Plaintiff is the sole owner of "Now View Music," and the copyright of "Literacy Now Through Music" lists the corporation as the publisher of the music. Apparently, defendant, in September and October 1993, sent plaintiff a check or checks representing at least some of the proceeds earned from the sale of the audiotapes.

### Standard for Summary Judgment

In reviewing a motion for summary judgment pursuant to Rule 56, this Court should only consider the narrow questions of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a Rule 56 motion, the Court cannot resolve issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir. 1982).

The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir.1989).

A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)), *quoted in Historic Preservation Guild v. Burnley*, 896 F.2d 985, 993 (6th Cir.1989). On the other hand, the opponent has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a *genuine issue for trial.*' " *Historic Preservation*, 896 F.2d at 993 (quoting *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized and consistently emphasized, recent Supreme Court decisions encourage the granting of summary judgments where there are no material facts in dispute. *Historic Preservation*, 896 F.2d at 993 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555). Consis-

tent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. "Mere allegations do not suffice." *Cloverdale*, 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Id.*

## DISCUSSION

■ "The Copyright Act of 1976 provides that copyright ownership 'vests initially in the author or authors of the work.'" *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 737, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989) (quoting 17 U.S.C. § 201(a)). "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Id.* (citing 17 U.S.C. § 102).

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the works that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991).

Here, defendant admittedly sold copies of the tapes of songs which plaintiff had copyrighted. However, he claims that his involvement in the original project was sufficient to make him a co-author of the songs and a co-owner of the copyright. In this sense, he is challenging the validity of a copyright being issued solely to plaintiff. Plaintiff contends that defendant's contributions to the copyrighted songs were not sufficient to constitute a "joint work," such that defendant could be considered a co-owner of the copyright.

"In a joint work, the joint authors hold undivided interests in a work, despite any differences in each author's contribution." *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068 (7th Cir.1994) (citing 17 U.S.C.

§ 201). "Each author as co-owner has the right to use or to license the use of the work, subject to an accounting to the other co-owners for any profits." *Id.* (citing *Childress v. Taylor*, 945 F.2d 500, 505 (2d Cir.1991); *Weinstein v. University of Illinois*, 811 F.2d 1091, 1095 (7th Cir.1987); 1 M. & D. Nimmer, *Nimmer on Copyright*, § 6.02 at 6–7 to 6–8)).

As defined in section 101 of the Copyright Act, "joint work" means "a work prepared by two or more *authors* with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." *Erickson*, 13 F.3d at 1068 (emphasis added).

Although plaintiff and defendant worked together on a project which may have been intended to be a unitary whole, plaintiff is correct in noting the intent as to that the project is not relevant to the present suit as the project was never completed and was never copyrighted. Rather, the question is whether defendant's contributions to the songs themselves and to the work "Literacy Now Through Song" were sufficient to make him a co-owner of the copyright.

"Even if two or more persons collaborate with the intent to create a unitary work, the product will be considered a 'joint work' only if the collaborators can be considered 'authors.'" *Id.* at 1069. As noted above, the Supreme Court has defined "author" as one "who translates an idea into a fixed, tangible expression entitled to copyright protection." *Reid*, 490 U.S. at 737, 109 S.Ct. at 2171.

In *Erickson*, the Court evaluated two possible tests to determine whether a party should be permitted to claim joint authorship status: the de minimus test and the copyrightable subject matter test. *Id.* The "de minimis" test merely "requires that 'more than a word or line must be added by one who claims to be a joint author.'" *Id.* at 1070 (quoting *Nimmer*, § 6.07 at 6–21). This test would allow a person to be considered a co-author even if the person only contributed "uncopyrightable plot ideas"[1] while the other

---

**1.** "In no case does copyright protection for an original work of authorship extend to any idea, ... [or] concept, ... regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).

person "incorporated those ideas into a completed literary expression." *Id.*

Defendant contends that the *Nimmer* de minimus test should be found to be applicable, citing *Words & Data, Inc. v. GTE Communications Services,* 765 F.Supp. 570, 574–76 n. 1 (W.D.Mo.1991) (citing with approval *Nimmer,* § 6.03 at 6–6, 6–8, 6–18.2, 6–18.3 (1990)).

The other test evaluated by *Erickson* is the "copyrightable subject matter" test, which states that a " 'collaborative contribution will not produce a joint work, and a contributor will not obtain a co-ownership interest, unless the contribution represents original expression that could stand on its own as the subject matter of copyright." *Id.* (quoting P. Goldstein, *Copyright: Principles, Law, and Practice* § 4.2.1.2, at 379 (1989)). Most courts to consider the issue have adopted, in some form, the test suggested by Goldstein. *Id.* (citing *Childress,* 945 F.2d at 507; *Ashton–Tate Corp. v. Ross,* 916 F.2d 516, 521 (9th Cir.1990); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1493 (11th Cir.1990)). This interpretation arises because of the repeated use of the term "author" in sections 101 and 302 of the Copyright Act, which "suggests that each collaborator's contribution must be a copyrightable 'work of authorship' within the meaning of § 102(a)." *Id.* at 1070–71.

Even *Nimmer* recognizes that the "de minimis" test has been soundly rejected in the architectural context,[2] and that "even outside the architectural context, the prevailing view in the case law flatly rejects the notion that contribution of ideas may suffice to qualify a contributor as a joint author, although in some courts the question remains open 'whether each author of a joint work must make an independently copyrightable contribution.' " *Nimmer,* § 6.07, at 6–21 to 6–22 (citing *Andrien v. Southern Ocean County Chamber of Commerce,* 927 F.2d 132, 136 (3d Cir.1991); *Childress,* 945 F.2d at 506 (stating that the issue is open and trouble-

some but mentioning a preference for the copyrightable test)).

Nevertheless, according to *Nimmer,* there is no statutory language or legislative history specifically requiring that contributions be copyrightable in order for the contributor to be considered a co-author and co-owner of the copyright. *Id.* According to *Nimmer,* "copyright's goal of fostering creativity is best served ... by rewarding all parties who labor together to unite idea with form, and that copyright protection should extend both to the contributor of the skeletal ideas and the contributor who fleshes out the project." *Id.*

However, I believe that *Erickson* is persuasive in pointing out that "the threat that accepting suggestions from another party might jeopardize the author's sole entitlement to a copyright" could hinder creativity and the free exchange of ideas contrary to the purpose of the Copyright Act. *Erickson,* 13 F.3d at 1070.

The Sixth Circuit has not addressed whether co-authorship can be established merely by providing ideas or other non-copyrightable contributions. In *Erickson,* the Seventh Circuit was faced with a situation in which the final version of a play was written in part as a result of ideas provided by actors during an improvisational process. 13 F.3d at 1064. The plaintiff took notes during the improvisational sessions, compiled them, and wrote the script. *Id.* Because its actors took part in the process, Trinity Theatre, the defendant, asserted that it was entitled to joint author status. *Id.* at 1066.

*Erickson* adopted Goldstein's "copyrightable" test, finding that it " 'strikes an appropriate balance in the domains of both copyright and contract law.' " *Id.* at 1071 (quoting *Childress,* 945 F.2d at 507). The court noted that a contributor of uncopyrightable ideas can protect his or her rights by contracting for some rights with the individual who is contributing copyrightable material, as copyrights can be transferred by contract. *Id.* (citing 17 U.S.C. § 201(d)).

---

**2.** *See e.g., M.G.B. Homes,* 903 F.2d at 1492–93 (finding that a home builder was not a joint author of architectural plans even though he prepared a sketch of what he wanted, reviewed architectural drawings in progress, made suggestions and corrections, and exercised final approval over the plans).

I believe that *Erickson* has correctly interpreted the copyright law and formulated a test that will serve the purposes of the law. By requiring a contribution to be copyrightable, creative efforts will be encouraged because there is no risk that a copyright on a finished work will be later found to be co-owned by a second person who has contributed or collaborated in some manner regarding the work where such contribution was not itself so creative as to be individually copyrightable. Simply put, unless the collaborator can be considered an "author," meaning one "who translates an idea into a fixed, tangible expression entitled to copyright protection," that collaborator cannot expect to be protected by the Copyright Act, absent a contractual arrangement transferring such rights. As noted by plaintiff, "ideas and concepts standing alone should not receive protection" by the Copyright Act. *Erickson,* 13 F.3d at 1070.

"Compared to the uncertain exercise of divining whether a contribution is more than de minimus [as required by the *Nimmer* test], reliance on the copyrightability of an author's proposed contribution yields relatively certain answers." *Id.* at 1071. By making the standard clear, post-contribution disputes, such as that involved in this case, are avoided. *Id.* At the same time, contributors, such as defendant, retain the ability to "protect themselves by contract if it appears that they would not enjoy the benefits accorded to authors of joint works under the Act." *Id.*

Because defendant acknowledges that his contribution of ideas and concepts was not copyrightable, he cannot, under the test adopted above, establish that he is a co-author of a joint work. There was no contractual arrangement transferring any of plaintiff's rights under the Copyright Act to defendant. Therefore, the undisputed facts demonstrate that his sale of tapes of songs copyrighted by plaintiff was and continues to be an infringement on plaintiff's copyrights. Furthermore, because defendant has no ownership of the copyrights, his counterclaim for an accounting by plaintiff concerning sales of the tapes must be dismissed.

Consequently, summary judgment is granted in favor of plaintiff as to his claims against defendant and also as to defendant's counterclaim against plaintiff.

Several issues have not been briefed by the parties, including the appropriate monetary relief and whether costs and/or attorney's fees should be awarded to plaintiff. The parties are ordered to brief these issues.

### *ORDER*

In accordance with the Opinion entered this date;

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment, filed July 12, 1994 (dkt. # 9), is **GRANTED;**

**IT IS FURTHER ORDERED** that defendant's counterclaim against plaintiff is **DISMISSED;**

**IT IS FURTHER ORDERED** that defendant shall place in possession of plaintiff any audio tapes containing the songs that form "Literacy Now Through Song (Phase 1)" which defendant still has in his possession;

**IT IS FURTHER ORDERED** that defendant shall, by October 7, 1994, render an accounting to plaintiff of all tapes sold by defendant which contain the subject songs and also of the funds derived from the tapes;

**IT IS FURTHER ORDERED** that defendant is enjoined from further infringement upon plaintiff's copyright to "Literacy Now Through Song (Phase 1)";

**IT IS FURTHER ORDERED** that on or before October 21, 1994 at 5:00 p.m., the parties shall file briefs with this Court on the issue of damages to be awarded to plaintiff and the issue of whether costs and attorney's fees should be awarded to plaintiff, including a proposed figure.