**DESIGN OPTIONS, INC., Plaintiff,**

v.

**BELLEPOINTE, INC., Defendant.**

No. 94 Civ. 7177 (RWS).

United States District Court,
S.D. New York.

Oct. 8, 1996.

ment. For the reasons set forth below, the motion will be granted.

**Parties**

Design Options is a wholesale knitwear business which designs, manufactures, imports and delivers finished knitwear products to customers who resell the products at wholesale or retail in department stores, smaller boutiques and specialty stores, and through mail order catalogs.

BellePointe is an Ohio-based wholesaler of sweaters, turtlenecks and related apparel and accessories, whose products are sold under its own label to department stores, specialty stores, boutiques and catalog companies.

**Prior Proceedings**

Plaintiff filed the complaint in this action on October 3, 1994, alleging copyright infringement by BellePointe of fifteen sweater styles that had been designed and created by Design Options and previously sold to Belle-Pointe. In BellePointe's responsive pleading, filed in November 1994, no affirmative defense was raised. On October 4, 1995, plaintiff filed an Amended Complaint alleging infringement of an additional style, for a total of sixteen sweater styles. In response, BellePointe served an amended answer, which included two affirmative defenses: (i) that BellePointe was a joint author of the sweater designs at issue; and (ii) that Belle-Pointe had acquired all right, title and interest in the designs of the sweaters sold to BellePointe.

Discovery in this action was ongoing from November 1994 until May 1996, when discovery officially closed, pursuant to Order of this Court. Plaintiff filed the instant motion for summary judgment on June 14, 1996. Oral argument was heard on September 11, 1996, at which time the motion was considered fully submitted.

**Facts**

In deciding a motion for summary judgment, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Bra-*

Dorsey & Whitney, New York City (Sandra Edelman, Bret I. Parker, of counsel), for Plaintiff.

Kreindler & Relkin, New York City (Brett J. Meyer, Wendy K. Reimer, of counsel), for Defendant.

SWEET, District Judge.

Plaintiff Design Options, Inc. ("Design Options") moves for summary judgment on the issue of the liability of defendant BellePointe, Inc. ("BellePointe") for copyright infringe-

*dy v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York,* 716 F.2d 982, 983–84 (2d Cir.1983). The facts as presented here are construed accordingly, and they are limited to this motion.

In 1988, BellePointe was formed for the purpose of producing a line of sweaters to be sold at wholesale to retailers. BellePointe enlisted Design Options to help create the new BellePointe product line.

Between 1988 and 1994, the parties operated under an arrangement whereby Design Options created Sweater Designs for Belle-Pointe. Between 1989 and 1994, Design Options sold approximately two hundred different sweater styles to BellePointe, with the annual volume of finished merchandise per year exceeding ten thousand sweaters. Most of the sweater styles that Design Options designed and manufactured for BellePointe were "theme" or "novelty" sweaters, such as Christmas, holiday, "nurse" and "teacher" sweaters, all of which had elaborate ornamental designs expressing the particular theme of the sweater.

Mary Bandeen ("Bandeen"), the President of BellePointe from 1989 to 1992, suggested ideas and concepts to Design Options. According to her deposition, Bandeen's input included "general ideas, general concepts of what we felt we could sell in very general categories," such as "crew necks versus cardigans versus theme sweaters versus solid sweaters...." Design Options then converted these ideas and concepts into a "first draft" of a design. Bandeen then worked in conjunction with Design Options to create a final version of the design. Once the designs were completed, Bandeen would select certain of the designs to be adopted into Belle-Pointe's product line.

As part of the agreement between the parties, Design Options also found a Hong Kong factory to produce the sweaters. Design Options turned the sweater designs over to the factory, which then delivered the finished product to BellePointe, and BellePointe sold the merchandise to retailers and catalog companies under its own label.

BellePointe paid Design Options a certain price per sweater that was, in effect, a "package price" which covered all the services Design Options provided to BellePointe, as well as the actual cost of the sweater. As compensation for its designing and sourcing services, Design Options added a 20–30% mark-up to the factory price. The subject of copyright or ownership rights in the styles was never discussed between Design Options and BellePointe. Design Options never registered for copyrights in any of the sweater designs at issue here until after it initiated this action.

Design Options and BellePointe appeared to have shared an understanding that the sweaters designed by Design Options for BellePointe were "exclusives"—that is, Design Options did not show sweaters that had been purchased by BellePointe to other customers. Throughout the parties' association, Design Options encouraged BellePointe to find alternative sources for the production of sweaters.

In the spring of 1994, Design Options delivered its last line of sweaters to Belle-Pointe. Shortly thereafter, Design Options discovered that BellePointe had copied many of the sweater styles previously purchased from Design Options and had arranged for the sweaters to be manufactured in factories of BellePointe's own choosing, without Design Options' authorization. Design Options then registered for copyrights in the sweater designs, and filed this action.

### Discussion

### I. *The Standard for Summary Judgment*

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *See Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York,* 72 F.3d 1051, 1060 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988); *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

A party seeking to defeat a summary judgment motion cannot "rely on mere speculation or conjecture as to the true nature of facts to overcome the motion." *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir.1995) (quoting *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)). Rather, the responding party "must show the existence of a disputed material fact in light of the substantive law." *Peer Int'l Corp. v. Luna Records, Inc.,* 887 F.Supp. 560, 564 (S.D.N.Y.1995) (no issue of material fact in a copyright case where ownership of valid copyright registrations and copying of musical compositions were undisputed).

Under appropriate circumstances, summary judgment has been granted to plaintiffs in copyright infringement actions. *See, e.g., Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.) (summary judgment granted where there was no dispute as to ownership of the copyright registration at issue and copying of the photograph), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992); *Lipton,* 71 F.3d at 469–73 (summary judgment granted on issue of infringement where copyright registration was not contested and there was a striking similarity between the works); *Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.,* 295 F.Supp. 1366 (S.D.N.Y.) (no dispute as to originality, access and copying), *aff'd,* 415 F.2d 1007 (2d Cir.1969).

As set forth below, summary judgment will be granted on the issue of BellePointe's liability for copyright infringement because, as a matter of law, based on undisputed facts, BellePointe did not have the right to copy, manufacture and sell the copyrighted sweater styles it had previously purchased from Design Options.

## II. *Design Options Has Established a Claim of Infringement*

In order to succeed on a claim of infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.,* a plaintiff must demonstrate ownership of a valid copyright and copying by defendant without authorization. *Rogers,* 960 F.2d at 306. Design Options has met both requirements.

Under the Copyright Act, a certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright. Design Options' submission of copies of its certificates of registration shifts the burden to BellePointe to rebut the presumption of copyright ownership. 17 U.S.C. § 410(c); *see also Rogers,* 960 F.2d at 306; *United Feature Syndicate, Inc. v. Koons,* 817 F.Supp. 370, 376 (S.D.N.Y.1993). BellePointe does not dispute that Design Options legitimately owns the copyrights to the Sweater Designs.

The second requirement, copying, can be met by evidence of direct copying or through indirect proof that defendant had access to the copyrighted works and that the parties' works are substantially similar. *Rogers,* 960 F.2d at 307; *Warner Bros. v. American Broadcasting Companies, Inc.,* 654 F.2d 204, 207–08 (2d Cir.1981). BellePointe does not dispute that the sixteen styles it manufactured are virtually identical to the sweater styles created, designed and manufactured by Design Options. Moreover, because Design Options previously sold these sixteen sweater styles to BellePointe, access to these designs is not in dispute.

Design Options has shown that it owns valid copyrights in the disputed sweaters and that BellePointe copied those sweaters. The

question is now presented whether Belle-Pointe has a valid defense to infringement.

### III. *BellePointe's Affirmative Defenses*

BellePointe initially asserted two affirmative defenses: 1) joint authorship of the designs at issue; and 2) acquisition of rights in the copyrights in the sweater styles based on the prior purchase of the sweaters from plaintiff.[1] In opposition to Design Options' motion for summary judgment, BellePointe asserts neither of these affirmative defenses. Instead, BellePointe claims that it acquired an implied license to sell the disputed sweater styles. As set forth below, BellePointe has failed to adequately demonstrate the existence of a material issue of fact as to any of its three asserted affirmative defenses.

### A. *BellePointe is Not a Joint Author Of the Sweater Designs*

■ In the Second Circuit, a work is considered to be jointly authorized under Section 101 the Copyright Act if two requirements are met: First, *both* parties must have intended, at the time of creation, that the work be jointly owned. *Childress v. Taylor,* 945 F.2d 500, 508–09 (2d Cir.1991). Second, even if such mutual intent existed at the time of creation, each party's individual contribution must be independently copyrightable. *Id.* at 505–08.

There is no evidence that both Design Options and BellePointe intended to create a work of joint authorship at the time of creation, or at any other time, and Design Options has submitted evidence that it never had any intent to create a work of joint authorship with BellePointe. The deposition testimony of BellePointe's own officers and employees confirms that there is no evidence of a shared intention to author or own the designs jointly in the sweater styles sold to BellePointe. Accordingly, there exists no genuine issue of material fact as to the question of a shared intent to author the designs jointly.

■ In any event, BellePointe has not shown that it meets the second requirement of a joint authorship defense—that it contributed independently copyrightable matter to the sweater designs. As a matter of law, it did not. BellePointe made suggestions of idea for themes, trims or colors. As BellePointe has conceded, such input does not rise to the requisite level to qualify as a joint author. Neither are such ideas independently copyrightable. An author is one "who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989). The suggestion of a color or a trim does not render a design a joint creation. As the court in *Childress* observed, the creator of a copyrightable work does not "so easily acquire a joint author" based on suggestions of ideas and "minor bits of expression." 945 F.2d at 509. *See also Balkin v. Wilson,* 863 F.Supp. 523 (W.D.Mich.1994) (finding no joint authorship and granting summary judgment because defendant's contribution to plaintiff's songs consisted only of ideas and certain technical specifications); *Fred Riley Home Building Corp. v. Cosgrove,* 864 F.Supp. 1034 (D.Kan. 1994) (designer of house is author and owner of copyright in house even though "builder presents ideas and concepts" and retains approval authority).

BellePointe's affirmative defense of joint authorship is factually and legally insufficient to avoid liability for copyright infringement.

### B. *BellePointe Did Not Acquire Rights In The Sweater Designs From Design Options*

■ BellePointe also asserted in its responsive pleadings, as an affirmative defense,

---

1. Defendant's Second Affirmative Defense reads as follows:

   BellePointe and Design [Options] conducted a regular course of business wherein BellePointe and Design [Options] created certain sweater designs. With regard to certain of such designs, BellePointe agreed to purchase and Design [Options] agreed to sell sweaters bearing such designs. The purchase price paid to Design [Options] not only included the sale of the sweaters but also included the right, title and interest to the design. Accordingly, BellePointe is the rightful owner of any design incorporated into any of the sweaters it purchased from Design [Options].

that it acquired rights in the sixteen sweater designs at issue when it purchased the sweaters bearing those designs during the period of its customer relationship with Design Options.

A purchaser does not acquire copyright rights in designs by the mere purchase of goods. The Copyright Act provides, in pertinent part:

> Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied.... Transfer of ownership of any material object ... does not of itself convey any rights in the copyrighted work embodied in the object.

17 U.S.C. § 202; *see Forward v. Thorogood,* 758 F.Supp. 782, 784 (D.Mass, 1991) (plaintiff did not obtain copyright rights in defendant's taped studio sound recordings even though plaintiff had arranged for recording session and had physical possession of only tapes of sessions), *aff'd,* 985 F.2d 604 (1st Cir.1993).

■ Thus, when BellePointe purchased various sweater styles from Design Options and resold those goods to its own customers, it acquired no rights in the copyrighted designs embodied in the sweater styles. Rather, when BellePointe purchased sweaters from Design Options between 1989 and 1994, it had the right to resell those goods pursuant to the "first sale" doctrine, which permits the sale of the material object in which the copyright is embodied without transferring ownership of the copyright. *See* 17 U.S.C. § 109(a); *Bourne v. Walt Disney Co.,* 68 F.3d 621, 631–633 (2d Cir.1995) (describing "first sale" doctrine), *cert. denied,* — U.S. ——, 116 S.Ct. 1890, 135 L.Ed.2d 184 (1996). The "first sale" doctrine did not permit BellePointe to reproduce the designs and to manufacture and sell new versions of Design Options' copyrighted sweater styles, since that right rests exclusively in Design Options as the owner of the copyrighted works. 17 U.S.C. § 106(1)–(3).

Indeed, under BellePointe's theory of copyright ownership, every time a retailer purchases merchandise from a designer, the retailer would thereby become the copyright proprietor of the apparel designs embodied in the merchandise, merely because it paid for the goods.

Moreover, the Copyright Act is clear that any transfer of copyright ownership must be in writing. 17 U.S.C. § 204(a). *Mellencamp v. Riva Music Ltd.,* 698 F.Supp. 1154, 1161–62 (S.D.N.Y.1988). Because there is no such writing in this case, defendant's second affirmative defense must fail as well.

### C. *BellePointe's Implied License Defense Fails*

#### 1. *The Defense Has Been Waived*

■ Finally, BellePointe asserts—for the first time in its memorandum of law submitted in opposition to this motion—an affirmative defense of "implied license." As set forth above, BellePointe plead two affirmative defenses, and implied license was not one of them. Design Options correctly notes that, under the circumstances, this defense has been waived pursuant to Fed.R.Civ.P. 8(c), which requires a party to "set forth affirmatively" any matter constituting an "avoidance or affirmative defense," including, specifically, the existence of a "license." Fed.R.Civ.P. 8(c). As an affirmative defense to copyright infringement, implied license must be pleaded pursuant to Fed.R.Civ.P. 8. *See Oddo v. Ries,* 743 F.2d 630, 634 & n. 6 (9th Cir.1984).

■ The Second Circuit has held that Rule 8(c) "is intended to notify a party of the existence of certain issues, and its mandatory language has impelled us to conclude that a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation." *Doubleday & Company, Inc. v. Curtis,* 763 F.2d 495, 503 (2d Cir.), *cert. dismissed,* 474 U.S. 912, 106 S.Ct. 282, 88 L.Ed.2d 247 (1985) (citing *Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984)). Accordingly, if a party fails to plead an affirmative defense, that defense is deemed to have been waived. *George A. Fuller Co. v. Alexander & Reed, Esqs.,* 760 F.Supp. 381, 385 (S.D.N.Y.1991).

■ Under these circumstances, the implied license defense belatedly raised by BellePointe has been waived and cannot be

considered. The Court's consideration of a previously unpleaded defense at this late stage in the proceedings would run afoul of the procedural safeguards ensured by Rule 8(c). *See Doubleday, supra,* 763 F.2d at 502. *See also Travellers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1580–81 (2d Cir.1994).

An unpleaded affirmative defense raised for the first time in a motion for summary judgment has been held to have been waived under Rule 8(c). *See MCI Telecommunications Corp. v. Ameri–Tel, Inc.,* 852 F.Supp. 659 (N.D.Ill.1994). In *MCI,* the defendant, in response to plaintiff's motion for summary judgment, attempted to raise affirmative defenses of estoppel and illegality that had not been pleaded. The court held: "we will not consider claims and defenses raised for the first time in a brief in response to a summary judgment motion." *Id.* at 666 (citing *Computer Network Corp. v. Compmail Systems, Inc.,* 1985 WL 2218 (N.D.Ill. July 10, 1985)).

Here, the Court is likewise unable to consider BellePointe's belated defense of implied license, in the face of Rule 8(c)'s plain language requiring such a defense to be affirmatively pleaded in the earlier stages of litigation. As this belated defense constitutes BellePointe's only stated opposition to Design Option's motion for summary judgment, that motion will be granted.

### 2. There is no Genuine Issue of Material Fact as to Whether BellePointe Had an Implied License in the Sweaters

■ Even if this Court were to address BellePointe's affirmative defense of implied license, the Court would nonetheless grant summary judgment in favor of Design Options.

BellePointe cites no binding Second Circuit authority for the proposition that it was granted an implied license to sell the sweater styles at issues. The three cases Bellepointe does rely on—*I.A.E., Inc. v. Shaver,* 74 F.3d 768 (7th Cir.1996), *Effects Associates, Inc. v. Cohen,* 908 F.2d 555 (9th Cir.1990), *cert. denied,* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991) and *Ladas v. Potpourri Press, Inc.,* 846 F.Supp. 221 (E.D.N.Y. 1994)—are readily distinguishable from the facts here.

First, in each of these cases, the copyright owner created and sold to the defendant a design—not finished merchandise—or a component of a larger work for the defendant's use in the larger work. Thus, in these cases, if a license was not implied to permit the defendant's use of the copyright owner's work, the work would otherwise have been rendered worthless. Here, Design Options sold BellePointe finished merchandise—not simply sweater designs—for BellePointe to resell to its customers. Accordingly, an implied license is in no way necessary to effectuate the purpose for which BellePointe purchased the goods, *i.e.,* the resale of those goods. BellePointe received the benefit of the bargain it made with Design Options when it resold the sweaters to its own customers, presumably at a profit.

BellePointe claims that the package price it paid for each sweater represented an investment in the underlying sweater designs, which investment could not be realized unless it had the right to copy the designs. But there is no evidence that there was anything more to the transaction between BellePointe and Design Options than the purchase of goods for an agreed-upon price.

Furthermore, in each of the cases cited by BellePointe, there was evidence on which the court could rely demonstrating that *both parties* to the transaction, not just the defendant, intended that the defendant could use or copy the plaintiff's work without liability for copyright infringement. As the court pointed out in *Allen–Myland v. International Business Machines Corp.,* 746 F.Supp. 520 (E.D.Pa.1990), an implied license to use a copyrighted work "cannot arise out of the unilateral expectations of one party." There must be objective conduct that would permit a reasonable person to conclude that "an agreement had been reached." *Id.* at 549. *See also N.A.D.A. Services Corp. v. Business Data of Virginia, Inc.,* 651 F.Supp. 44, 49 (E.D.Va.1986) ("The creation of an implied license, as in the creation of any implied contract, requires a meeting of the minds").

Here, BellePointe has failed to offer any evidence from which a "meeting of the minds" could reasonably be inferred. The

record on this motion for summary judgment shows only that Design Options sold finished merchandise to BellePointe for a price, and never conveyed any rights to BellePointe, either directly or impliedly, to use the sweater designs Design Options had created.

In opposing Design Options' motion for summary judgment, there must be more than a "scintilla of evidence" in support of BellePointe's position; BellePointe bears the burden of showing that there is sufficient evidence to permit the factfinder to reasonably find that there was a "meeting of the minds" between BellePointe and Design Options on the issue of an implied license. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see also Pinkham v. Sara Lee Corp.,* 983 F.2d 824, 830–33 (8th Cir.1992) (appellate court upheld grant of summary judgment to plaintiff on a claim of copyright infringement against a book distributor where there was insufficient evidence presented by defendant on the motion that it had an implied license to reproduce and distribute the plaintiff's book). BellePointe has not met its burden here.

As evidence of the existence of an implied license, BellePointe points to a facsimile, dated November 5, 1991, from Design Options to BellePointe, urging BellePointe to find other sources for sweaters. BellePointe claims that implicit in this communication is the understanding that BellePointe had the right to manufacture the same sweater styles previously purchased from Design Options. Design Options claims that no such understanding is implicit, and that the facsimile simply expressed that BellePointe should develop other sources for sweaters generally. In any event, a single ambiguous fax, sent over two years before BellePointe began copying the sweater styles at issues, is insufficient to defeat Design Options' motion for summary judgment. BellePointe also points to the fact that Design Options did not show the sweater styles at issue here to other buyers. Such an exclusivity agreement, however, is not evidence of a mutual understanding that BellePointe was granted an implied license to resell the sweaters. Rather, it was simply Design Options' business practice to sell different sweater styles to different customers, in order to maintain the unique image of the theme sweaters.

In sum, BellePointe's evidentiary arguments do not amount to a showing that Design Options understood that it was conveying a license to BellePointe to use its sweater designs. *See Pinkham,* 983 F.2d at 833 (affirming grant of summary judgment to plaintiff on claim of copyright infringement where defendant cited twelve different evidentiary factors that created an issue of fact as to whether there was an implied license to use plaintiff's work, but none of the factors, individually or together, supported the inference of implied authorization asserted by defendant).

*Conclusion*

For the reasons set forth above, Design Options' motion for summary judgment is hereby granted.

It is so ordered.